The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Willis. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except with the modification of the average weekly wage and compensation rate as referenced in finding of fact number 12, conclusions of law 2 and 3, and award number 1.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, with the defendant employing three or more regular employees.
2. The date of any alleged injuries by accident are 26 January 1993 and 22 February 1993.
3. At all times pertinent hereto, there was an employee-employer relationship between the plaintiff and the defendant.
4. Travelers is the insurance carrier on the risk.
5. Plaintiff did not work for the defendant from 23 February 1993 and continuing through the date of the hearing.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 50 years old, with a date of birth of 17 September 1943. For her education, plaintiff had attended nursing school in 1962; and she returned to school in 1971, earning her degree as a Registered Nurse. Since earning her degree, plaintiff had worked for hospitals and nursing homes. For eleven years prior to 1993, plaintiff had worked full-time for Evergreen Nursing Home (hereinafter "Evergreen"). Since 1990 plaintiff had worked for defendant at a part-time, second job. Defendant is in business as an agency placing nurses for private duty care.
2. Prior to 1993 plaintiff had a medical history which included insulin-dependent diabetes since 1972 and problems with her heart and her back. Plaintiff stopped working in December 1991 and was out of work for about a year, through November 1992, for conditions which were not work related. Plaintiff initially stopped working in December 1991 because of a heart condition. In January 1992 plaintiff suffered a heart attack, for which she underwent surgery in February 1992. After a course of physical therapy for her heart, plaintiff began to suffer problems with her back. Plaintiff had a congenital or degenerative condition of her back which caused her back to be unstable. In August 1992 Dr. Philip Deaton performed surgery to plaintiff's back, which was a bilateral decompressive laminectomy at spinal level L5-S1. At the time of the surgery, Dr. Deaton considered a fusion as an alternative procedure, but he chose a less invasive procedure because of plaintiff's diabetes, obesity and other health problems.
3. Plaintiff recovered from the surgery more quickly than expected, and in November 1992 plaintiff asked Dr. Deaton to release her to return to work. On 16 November 1992 Dr. Deaton released plaintiff to return to work, and plaintiff returned to work with defendant on the same day. When she returned to work with defendant, plaintiff did not work a full 40-hour week and intended to return to work with Evergreen on a full-time basis on 1 February 1993.
4. Between November 1992 and February 1993 plaintiff worked as a private duty nurse for Ms. Jeanette Cavanaugh, a patient who was terminally ill with throat cancer. Ms. Cavanaugh had to be fed through a stomach tube. On the night of 26 January 1993 (Tuesday), plaintiff was bringing two cans of food to the patient's room, and the Cavanaugh's dog tried to enter the room. The dog was a Golden Retriever, which was overweight and weighed approximately 85 pounds. Plaintiff tried to close the door to keep the dog out. As she closed the door, plaintiff lost her balance, dropped the cans of food and fell against the door. This incident was interruption of her regular work routine by unusual circumstances likely to result in unexpected consequences. Ms. Cavanaugh woke when she heard the fall, and Mr. Cavanaugh came to the room to inquire what had happened (although plaintiff's nursing notes indicate that Ms. Cavanaugh had to be awakened for her feeding), and Mr. Cavanaugh did not recall the incident.
5. After the fall, plaintiff felt "jarred." She was able to finish her shift, but that night she used a heating pad because of discomfort. Plaintiff was not scheduled to work the next two days (Wednesday and Thursday). Plaintiff returned to work on 29 January 1993 (Friday); and she was able to complete her shift with no problems, although most of her job duties allowed her to sit. Plaintiff was not scheduled to work on Saturday and Sunday.
6. On Monday (1 February 1993) plaintiff returned to work for Evergreen. For the first week, she worked four days and went through an orientation course. Plaintiff was not scheduled to work Saturday through Monday (6-8 February 1993), and she was out of work due to sickness on (9 February 1993). Plaintiff assumed her regular full-time duties with Evergreen on Wednesday (10 February 1993). The job with Evergreen was a light duty position. Plaintiff worked at Evergreen from 1 February 1993 through 12 March 1993, with five sick days.
7. On 22 February 1993 plaintiff was not scheduled to work at Evergreen. On this date plaintiff returned to the Cavanaugh's home to work as a private duty nurse through defendant. This was the only occasion plaintiff would work for defendant during the six weeks after her return to work with Evergreen.
8. While at the Cavanaugh's home on 22 February 1993 (Monday), plaintiff noticed that one of the dog's toys was in the hallway. Plaintiff went to get the toy so that Ms. Cavanaugh would not trip over it. The toy was used to play "tug of rope" with the dog; and when plaintiff tried to clear the toy from the hall, the dog jerked on the toy and caused plaintiff to experience sudden, low back pain. This incident was an interruption of her regular work routine by unusual circumstances likely to result in unexpected consequences.
9. Plaintiff worked at Evergreen the next day (Tuesday). She was scheduled to work from Wednesday through Friday, but was out of work sick. On Monday (1 March 1993) plaintiff returned to work with Evergreen, and she called defendant to report the incident with the dog's toy the previous Monday.
10. Plaintiff returned to Dr. Deaton on 16 March 1993. Dr. Deaton ordered several tests, including an MRI, a myelogram/CT scan, and a discogram. Dr. Deaton referred plaintiff to Dr. James Nitka, an orthopedic surgeon. On 16 July 1993 Dr. Nitka performed a second surgery to plaintiff's back which included a repeat decompression at spinal level L5-S1 and a fusion at spinal levels L4-5 and L5-S1. The last treatment plaintiff received was on 28 February 1994, and at that time plaintiff was taking no particular medication for back pain.
11. On 26 January 1993 and 22 February 1993 plaintiff significantly aggravated a pre-existing back condition. Due to this aggravation and the resulting impairment to her back, plaintiff was unable to be gainfully employed at her regular job with defendant, or any other employment, from 15 March 1993 through 28 February 1994. From 1 March 1994 and continuing, plaintiff has been capable of returning to work at jobs with sedentary duties; however, there is insufficient evidence of record from which the undersigned can infer from its greater weight that jobs were available within plaintiff's restrictions which plaintiff could reasonably be expected to obtain in a competitive job market.
12. The wages plaintiff earned working for defendant from mid-November 1992 through the end of January 1993 do not approximate the wages plaintiff would have earned from defendant if not for the injury. Once plaintiff returned to work with Evergreen as her primary employer, plaintiff worked for defendant for only one day and showed no indication of working more regularly for defendant. It had been plaintiff's intention to return to work full-time with Evergreen and to work for defendant as a second, part-time job, as she had before she stopped working in December 1991, during which time she earned $2,214.00, which would yield an average weekly wage of $41.00. However, since plaintiff has returned to work for one day on 22 February 1993 for six hours at $18.00 per hour, an average weekly wage of $108.00, yielding a weekly compensation rate of $72.00, would most nearly and most reasonably approximate what she would have earned from defendant if not for her injuries.
13. The treatment plaintiff received for her back from 15 March 1993 through 28 February 1994 was made necessary as a result of the incidents of 26 January 1993 and 22 February 1993 while working for defendant. Any other medical treatment plaintiff has received was not made necessary as a result of those incidents.
14. The undersigned makes no findings regarding any permanent partial impairment to plaintiff's back which may have been caused by the incidents of 26 January 1993 and 22 February 1993.
* * * * * * * * * * *
The foregoing stipulations and findings of fact engender the following
CONCLUSIONS OF LAW
1. On 26 January 1993 and 22 February 1993 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. N.C.G.S. § 97-2(6).
2. Plaintiff's average weekly wage was $108.00 per week, yielding a compensation rate of $72.00 per week. N.C.G.S. § 97-2(5); N.C.G.S. § 97-29.
3. Plaintiff is entitled to temporary total disability compensation in the amount of $72.00 per week for the period of time beginning on 15 March 1993 and continuing until plaintiff sustains a change of condition or returns to work, or until defendants obtain permission from the Industrial Commission to stop payment of compensation. N.C.G.S. § 97-29.
4. Plaintiff is entitled to the payment of all medical expenses incurred, or to be incurred, as a result of the injuries by accident of 26 January 1993 and 22 February 1993. N.C.G.S. § 97-25.
* * * * * * * * * * *
The foregoing stipulations, findings of fact and conclusions of law engender the following
AWARD
1. Defendants shall pay plaintiff temporary total disability compensation in the amount of $72.00 per week beginning on 15 March 1993 and continuing until plaintiff sustains a change of condition or returns to work, or until defendants obtain permission from the Industrial Commission to stop payment. For all payments which have accrued through 19 October 1994, the date the initial Opinion and Award was filed by Deputy Commissioner Willis, payment shall be made in a lump sum and all payments shall be subject to an attorney's fee as provided below.
2. Defendants shall pay all medical expenses incurred, or to be incurred, as a result of the injuries by accident of 26 January 1993 and 22 February 1993.
3. An attorney's fee in the amount of 25 percent of all compensation due plaintiff is hereby approved for plaintiff's counsel. Payment shall be made by deducting 25 percent from all compensation due plaintiff and forwarding same directly to plaintiff's counsel. For all future compensation, payment shall be made by making every fourth check payable to plaintiff's counsel and forwarding same directly to plaintiff's counsel.
4. Defendants shall pay the costs due this Commission for the initial hearing before the Deputy Commissioner including expert witness fees in the amount of $300.00 to Dr. Deaton and $450.00 to Dr. Nitka. Each side shall bear its own costs for hearing before the Full Commission.
 S/ ________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ________________________ JAMES J. BOOKER COMMISSIONER